**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Daniel V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50435 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin J. O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

     Plaintiff, Daniel V., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [15], [22]. For the reasons set forth below, Plaintiff's motion for summary judgment [15] is denied and the Commissioner's motion for summary judgment [22], is granted.

**BACKGROUND**

     A.    Procedural History

     On May 23, 2014, Daniel V. ("Plaintiff") applied for Disability Insurance Benefits. R. 16. This application alleged a disability beginning on June 5, 2013. *Id.* The Social Security Administration ("Commissioner") denied his application on July 18, 2014, and upon reconsideration on September 15, 2014. *Id.* Plaintiff appeared for a hearing on September 22, 2016, held by Administrative Law Judge ("ALJ") Michael B. Richardson. Plaintiff received an unfavorable decision by ALJ Richardson on February 3, 2017. R. 16-26. The Appeals Council denied Plaintiff's request for review on November 16, 2017. R. 1-6. Plaintiff then appealed this decision to the United States District Court for the Central District of California, which remanded the matter on February 8, 2019. R. 466-84. The Appeals Council then vacated the Commissioner's decision and remanded for further proceedings before an ALJ on April 2, 2019. R. 485-89. Pursuant to the District Court for the Central District of California, the Appeals Council allowed Plaintiff a new hearing to complete the administrative record and issue a new decision for the period of time from the alleged disability of June 5, 2013, to August 6, 2017. R. 352. Therefore, a hearing was held before ALJ Cynthia M. Bretthauer on September 24, 2019. R. 352. Plaintiff was represented by counsel. *Id.* At the hearing, medical expert Joseph R. Gaeta, M.D., appeared and testified, as did a vocational expert. *Id.*

     On October 16, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 352-62. Plaintiff appealed the decision to the Appeals Council,

---

[1] Martin J. O'Malley has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

and the Appeals Council denied Plaintiff's request for review. R. 342-48. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion for summary judgment [15] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22].

### B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of June 5, 2013, through August 6, 2017. R. 354. At step two, the ALJ found that through August 6, 2017, Plaintiff had the following severe impairments: multilevel degenerative disc disease of the lumbar spine, with sprain/strain and spinal stenosis; obesity; and history of bilateral bicep tendon ruptures. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R. 354-55. At step three, the ALJ found that through August 6, 2017, Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 355.

Before step four, the ALJ found that through August 6, 2017, Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: he could frequently climb stairs and ramps; could occasionally stoop, crawl, crouch, kneel, and balance; never climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to unprotected heights and moving and hazardous machinery. R. 355. At step four, the ALJ found that through August 6, 2017, Plaintiff was unable to perform any past relevant work. R. 360. Finally, at step five, the ALJ found that through August 6, 2017, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including mail clerk, routing clerk, and office helper. R. 361. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 5, 2013, through August 6, 2017. R. 362.

### STANDARD OF REVIEW

The reviewing court examines the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). *See also Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "When reviewing a disability decision for substantial evidence, '[w]e

will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence support it.'" *Warnell*, 97 F.4th at 1052-53 (quoting *Gedatus v. Saul*, 994 F. 3d 893, 900 (7th Cir. 2021)).

## DISCUSSION

Plaintiff argues: 1) the ALJ failed to give the proper weight to Plaintiff's treating physician's opinions; 2) the ALJ's subjective symptom evaluation is not supported by substantial evidence; and 3) the ALJ erred by relying on unsupported and unreliable VE testimony. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). The ALJ must first determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ may decline to give controlling weight to a treating physician's opinions, if she "provide[s] 'good reasons' for affording it less weight." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2); *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018)). A court should "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)).

If the ALJ decides not to give controlling weight to a treating physician's opinion, she must evaluate certain checklist factors provided by the regulations. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). These factors include but are not limited to the nature and extent of the treatment relationship (including its length, and the frequency of examinations), the opinion's supportability, the opinion's consistency with the medical record as a whole, and the treating physician's specialization. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citation omitted).

In determining the RFC, the ALJ assessed the opinion of Plaintiff's treating physician – Richard Lovell, MD. Consistent with the first step of the treating physician rule, the ALJ analyzed whether to give Dr. Lovell's opinion "controlling weight," by evaluating if the opinion was both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other evidence. 20 C.F.R. § 404.1527(c)(2). The ALJ found that Dr. Lovell noted many limitations of Plaintiff that were not supported by the medical evidence in the record, stating:

> In October 2016, Dr. Lovell opined that the claimant was limited to sitting about 4 hours, and standing/walking less than 2 hours total in a workday, would require

3

unscheduled breaks, would need to shift at will, and elevate his bilateral lower extremities due to back and leg pain. The claimant was noted to have mild edema in the ankles and feet at Exhibit 2F/5; however, his physical examinations generally reflect no evidence or lower extremity edema or need to elevate the lower extremities. On physical examination, he generally has lumbar spine tenderness and in July 2016 had positive straight leg raising, but he maintained full 5/5 strength in the bilateral lower extremities and a normal and unassisted gait (see 5F). Dr. Lovell assessed limitations of lifting occasionally less than 10 pounds, reaching overhead less than 5 percent of the time and in other directions up to 5 percent of the workday, and fine and gross manipulations up to 25 percent of the workday. While the claimant demonstrated "fair flexion of the elbows" in July 2016…the limitations occasioned by the claimant's biceps rupture would heal on its own and would not significantly limit the claimant for a period of 12 months. Dr. Lovell also assessed work-preclusive off task limitations that are not supported by any medical findings. R. 360.

The ALJ also noted that Dr. Lovell's July 2016 assessment indicated bicep bulging, more prominent on the right, limited shoulder abduction, fair strength of flexion of the elbows, but with pain on range of motion. R. 357. It was further noted that Plaintiff had no medical history of surgery and, in July 2016, was advised by Dr. Lovell to engage in stretching as treatment. *Id*. Dr. Lovell also provided a Physical Medical Source Statement. R. 325-28. The Statement notes Dr. Lovell's "recent" contact with Plaintiff, a diagnosis, including low back pain, bilateral torn biceps, and bilateral arm pains. As to treatment, the Statement states "hydrocodone as needed." Regarding any other limitations, Dr. Lovell notes "physical limitations are the issue." *Id.* The remainder of the Statement is little more than checked boxes. The ALJ found Dr. Lovell's opinions inconsistent with the record as a whole and gave his opinion little weight in assessing Plaintiff's RFC. *See Baptist v. Kijakazi*, 74 F.4th 437, 444-45 (7th Cir. 2023) ("if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it") (citation omitted).

In finding that Dr. Lovell's opinions were inconsistent with other evidence, the ALJ relied on the medical expert opinion of Joseph Gaeta, MD. Dr. Gaeta reviewed Plaintiff's entire medical record and testified at Plaintiff's hearing before the ALJ. Dr. Gaeta acknowledged Plaintiff's degenerative disc disease of the lumbar spine, ruptured bicep tendons, and obesity. As to the ruptured bicep tendons, Dr. Gaeta opined that the treatment for that injury is to give it time to heal. Soon after an injury of that nature, Plaintiff would not be expected to curl 20 pounds, but, according to Dr. Gaeta, he would be able to perform this task within 12 months. R. 358. As to Plaintiff's lower back symptoms and spinal issues, Dr. Gaeta indicated no medical necessity for the use of a cane or other assistive device. Dr. Gaeta also noted Plaintiff's July 2016 examination reflected full strength in the bilateral lower extremities and normal gait. R. 359. Additionally, despite Plaintiff's reported radicular symptoms, Dr. Gaeta noted Plaintiff's medical records indicated Plaintiff receiving injections to address his lumbar spine pain and noted Plaintiff experienced flare-ups only one to two times per year. Regarding Plaintiff's obesity, Dr. Gaeta acknowledged this as a severe impairment and in combination with Plaintiff's spinal impairment, Plaintiff would be considered reasonably limited as to his ability to perform physical activity in the work environment. *Id*.

4

However, Dr. Gaeta found that Plaintiff's testimony concerning the severity of his symptoms inconsistent with his treatment records and objective medical findings. *Id*.

The ALJ also noted Plaintiff's October 2016 orthopedic consultative examination by Vicente R. Bernabe, DO. At the time, Plaintiff complained of bilateral arm pain from a 2011 work related injury. R. 356. Dr. Bernabe noted proximal migration of biceps muscle in the bilateral shoulders consistent with distal biceps tendon rupture. Dr. Bernabe also assessed degenerative disc disease of the lumbar spine and tender shoulders. In October 2016, Plaintiff was experiencing pain, yet his range of motion was within normal limits. As to his lower lumbar region, Dr. Bernabe noted tenderness, without spasm, reduced range of motion, and negative straight leg raising. R. 357. Dr. Bernabe also stated Plaintiff's gait was normal and unassisted and his strength in his bilateral upper extremities was at 4/5. R. 357. Finally, Dr. Bernabe assessed Plaintiff with the ability to perform light work at a range of light exertion, frequently pushing and pulling, performing postural maneuvers, and gross and fine manipulations. R. 360. The ALJ gave Dr. Bernabe's opinion partial weight because although his opinion was reasonably supported by objective medical findings, the evidence adduced at the hearing, including Dr. Gaeta's opinion, supported greater limitations.

The Court further notes that the ALJ, in assessing all the medical evidence and concluding that Dr. Lovell's opinion should not be given controlling weight, found that the opinions rendered by the State agency medical consultants, as well as the orthopedic consultative examiner, Mario Luno, MD, were to be given little weight. Those opinions found Plaintiff limited to performing work at a range of medium exertion. The ALJ found the evidence post-hearing supported greater limitations.

Because the ALJ did not give controlling weight to Plaintiff's treating physician, the regulation required the ALJ to consider other factors. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion. The applicable regulations guide that decision by identifying several factors that an ALJ must consider: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion.") (citations and quotations omitted). As to the length, nature, and extent of the relationship between Plaintiff and his treating physician, Dr. Lovell, the ALJ significantly noted that while Dr. Lovell was Plaintiff's primary physician in the past, their relationship resumed in July 2016 more than three years after Plaintiff's onset date of June 2013. Dr. Lovell's medical statement indicated the renewed relationship was only 3 months old. R. 325. Regarding types of tests performed, a review of the medical records shows a medication review. R. 319-24. The remainder of Plaintiff's contact with Dr. Lovell appears to be contained in his October 2016 medical source statement (R. 325-28), a summary of which is set forth above. A review of the medical records reveals that Dr. Lovell's opinion lacks support and consistency with the medical record as a whole. For all these reasons, the Court finds that the ALJ did not err in giving little weight to Dr. Lovell's opinion.

Plaintiff also argues that the ALJ's subjective symptom evaluation is not supported by substantial evidence. At the hearing, Plaintiff testified that pain from his physical symptoms prevented him from using a ladder, lifting, or standing for prolonged periods of time. He experienced pain in his bilateral biceps and lower back. He described his pain as being "jabbed"

5

or "hit with a sledgehammer," constant, and radiating down his bilateral lower extremities. R. 356. He said he would prop himself up on his arms while sitting to relieve pressure on his back, and with more extensive pain (approximately once a day), he would use a cane. *Id*. Plaintiff also stated that reaching overhead induced a tremendous amount of pain. As to treatment, Plaintiff testified he used Norco for pain. He stated the use of Norco explained why his treatment records from November 2013 through August 2017 did not indicate any complaints of upper extremity symptoms. He attended two physical therapy sessions and received numerous back injections but did not treat with a pain management specialist. To relieve other pain, Plaintiff would alternate between sitting and standing, taking hot showers, and using medication. *Id*. As to Plaintiff's activities of daily living, the ALJ noted that Plaintiff testified to mainly sitting at home and watching television. He would occasionally put a TV dinner in the oven. He testified that dieting did not help him lose weight. Plaintiff testified that his wife worked full-time, took care of the household chores, and handled the yard work. *Id*. Following this summary, the ALJ stated: "After careful consideration of the evidence, the undersigned find the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 356.

Under the controlling regulation, the ALJ considers a plaintiff's symptoms, including pain, but the regulation is clear that "statements about [plaintiff's] pain or other symptoms will not alone establish that [plaintiff] is disabled. There must be objective medical evidence from an acceptable medical source that shows [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [plaintiff's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [plaintiff is] disabled." 20 C.F.R. § 404.1529(a). As the Seventh Circuit has held: "We do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.' To determine the credibility allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record. A claimant's assertions of pain, taken alone, are not conclusive of a disability." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).

As reviewed above, the ALJ considered the objective medical evidence and the record, including Plaintiff's contacts with his medical providers, his medications and treatments, and the medical professionals' objective reasonings and findings. For example, the ALJ acknowledged Plaintiff reported lower back "flare ups," lumbar pain, a medication regiment of Norco, and noted that he did very little at home. Yet, the ALJ weighed these findings against the objective medical evidence contained in the medical records including Dr. Gaeta's opinions. Based on the overall assessment of the record, the ALJ concluded that Plaintiff's RFC supported light work. This conclusion was reached by substantial evidence, including the ALJ's determination of Plaintiff's credibility, which this Court does not find to be "patently wrong." "Finally, even if reasonable minds could differ on the ALJ's rejection of [Plaintiff's] testimony, [the court] will not reweigh evidence or substitute [its] judgment for the ALJ's." *Zoch*, 981 F.3d at 602.

6

Finally, Plaintiff makes the argument that the ALJ erred by relying on unsupported and unreliable testimony from the vocational expert ("VE"). At the hearing, the VE testified that jobs were available to Plaintiff given his RFC, including mail clerk, with 10,400 jobs in the national economy, routing clerk, with 40,000 jobs nationally, and office helper, with 55,000 jobs nationally. Following the hearing, Plaintiff submitted a brief challenging the reliability of the VE's testimony. The ALJ disregarded Plaintiff's post-hearing arguments, finding that the VE "has professional knowledge and experience in job placement," and that the VE's job numbers "are reliable as they are from sources of information administratively noticed under the regulations." R. 362. Plaintiff submits that the VE's testimony did not satisfy the Commissioner's burden because it was not reliable. Plaintiff's post-hearing brief argued that the software used by the VE to identify job numbers in the economy identified a significant number of jobs (as to mail clerk and officer helper) that did not exist. He further argues that the routing clerk jobs identified by the VE required physical capabilities beyond Plaintiff's RFC. Ultimately, Plaintiff argues: "While the ALJ acknowledged a post-hearing brief, the ALJ did not discuss any of the actual evidence presented therein. The ALJ did not resolve conflicts between the evidence presented in counsel's post-hearing brief and the VE's testimony." [15], p. 13.

The ALJ relied on the testimony of the VE, noting that the VE's testimony conformed to Agency rules and regulations, also noting that Plaintiff's representative at the hearing had the opportunity to fully cross examine the VE. On cross-examination, Plaintiff's counsel questioned the VE by altering the hypotheticals and questioning the VE's methodology. R. 409-15. Generally, Plaintiff's counsel questioned possible reductions in job availability (as to the identified titles) as applied to the presented hypotheticals. In response to the questioning, the VE explained the methodology. *Id*. Plaintiff now argues that the numbers the VE testified to (using the SkillTRAN and Job Browser Pro methods) for the mail clerk and officer helper positions, are inaccurate. Plaintiff argues these number do not represent 10,400 and 55,000 available jobs, but 2,130 and 3,711 available jobs, respectively.

The Seventh Circuit has held that "[f]ailing to ask any questions to reveal shortcomings in the job-number estimates," results in a waiver of any challenge to the VE testimony. *Coyier v. Saul*, 860 F.App'x 426, 427-28 (7th Cir. 2021). The *Coyier* court goes on to note that while plaintiff's counsel did question the VE concerning job-number estimates, "[b]ecause counsel failed to develop an argument or question the VE any further about his methodology, the ALJ was entitled to rely on the job-number estimates." *Id*. At 428. However, the Seventh Circuit has also made clear that "if a vocational expert's testimony appears to conflict with the DOT [Dictionary of Occupational Titles], the ALJ must obtain a reasonable explanation for the apparent conflict, and that a claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so." *Brown v. Colvin,* 845 F.3d 247, 254-55 (7th Cir. 2016). Nevertheless, the regulation "requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's testimony and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (emphasis in original). "A conflict is apparent if it is 'so obvious that the ALJ should have picked up on [it] without any assistance.'" *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (quoting *Overman*, 546 F.3d at 463). Here, as noted above, Plaintiff's counsel cross-examined the VE. However, by failing to ask questions directed at the specific shortcomings of the VE's methodology and the specific number of jobs in economy as to the identified titles, Plaintiff has waived this argument. Further, the ALJ

7

is excused from examining the VE in this context as Plaintiff has presented no evidence that the ALJ could have identified an apparent conflict.

Finally, even if the Court were to find that the job numbers for mail clerk and office helper were inaccurate and that the ALJ should have identified this problem as an apparent conflict, this error would be harmless as no similar argument was made as to the routing clerk job identified by the VE as being available in adequate numbers in the national economy. The VE testified to 40,000 routing clerk jobs available. While Plaintiff's post-hearing brief (R. 712-15) presents an argument that the 40,000 job availability number must be reduced as applied to a light work analysis, the Court finds this speculative. Additionally, the ALJ did not err in finding that the VE gave reliable testimony. The VE provided a "reasoned and principled explanation to meet the low substantial evidence threshold" and "gave enough detail for [the ALJ] to understand the sources of h[er] data and the general process [s]he adopted." *Chavez v. O'Malley*, 96 F.4th 1016, 1024 (7th Cir. 2024) (citations and quotations omitted). Additionally, "where a vocational expert's testimony was sufficiently cogent and thorough and did not give the ALJ any reason to suspect that [her] methodology was unreliable, the ALJ is not required to seek further clarification." *Id*. At 1025. The Court finds the ALJ did not err in finding the ALJ's testimony supported and reliable.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [15], is denied, the Commissioner's motion [22], is granted.

Date: 05/20/2024                ENTER:

_Margaret J. Schneider_
United States Magistrate Judge